IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21 CV 158-MR-WCM

| | |
|---|---|
| CHRISTOPHER LYNN WILSON; TYANNA ARLENE WILSON; and CHRISTOPHER GEORGE WOODBY, <br><br> Plaintiffs, <br><br> v. <br><br> ASSOCIATED PETROLEUM CARRIERS, INC.; CHRISTOPHER LEWIS SCOTT; PETROLEUM CARRIERS, INC.; and CD ENERGY, LLC, <br><br> Defendants. | MEMORANDUM AND RECOMMENDATION |

This matter is before the court on Defendants' Partial Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion to Dismiss") (Doc. 26) and Defendants' Motion for Judgment on the Pleadings (the "Motion for Judgment on the Pleadings") (Doc. 29), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Background

A. Relevant Procedural History

On June 17, 2021, Plaintiffs Christopher Lynn Wilson, Tyanna Arlene Wilson, and Christopher George Woodby (collectively, "Plaintiffs") filed their original complaint against Christopher Lewis Scott ("Scott"), Associated

1

Petroleum Carriers, Inc. ("APC"), Petroleum Carriers, Inc. ("PC"), and CD Energy, LLC ("CD Energy"). Doc. 1.

On September 10, 2021, Plaintiffs filed an amended complaint, which is now the operative complaint in this matter ("Amended Complaint"). Doc. 23.[1]

On September 24, 2021, Defendants filed a Partial Motion to Dismiss Plaintiffs' Amended Complaint and a supporting memorandum, an Answer to the Amended Complaint, and a Motion for Judgment on the Pleadings and supporting memorandum. Docs. 26, 27, 28, 29, 30. Plaintiffs have responded. Docs. 31, 32. Defendants have not filed replies, and the time to do so has passed.

### B. Plaintiffs' Allegations

Plaintiffs' claims arise out of a December 28, 2019 multi-vehicle accident. Plaintiffs allege that Scott was operating a 2018 Peterbilt Tractor ("the Tractor") on a section of Interstate-26 in Buncombe County and was travelling behind a 2011 Hyundai driven by Plaintiff Tyanna Wilson and in which Plaintiff Christopher Wilson was a passenger (the "Wilson Vehicle").[2] Mr. Woodby was operating a 1992 Honda (the "Woodby Vehicle") ahead of the

---

[1] Plaintiffs assert that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Doc. 1 at ¶ 17; Doc. 23 at ¶ 18. All Plaintiffs are citizens of North Carolina. Doc. 23 at ¶¶ 1-4. All Defendants are citizens of South Carolina. Doc. 23 at ¶¶ 5, 6, 9; Doc. 35 at 2.

[2] Ms. Wilson's 9-year-old son was also a passenger but is not a party to this action. Doc. 23 at ¶¶ 24-26.

Wilson Vehicle. Doc. 23 at ¶ 14, 50.

"Due to road construction and/or slowing and/or stopped traffic ahead," Ms. Wilson and Mr. Woodby applied the brakes in their respective vehicles and brought them to a controlled stop. Id. at ¶ 35. Scott, however, failed to see that Plaintiffs' vehicles were at a complete stop in front of him and collided with the rear of the Wilson Vehicle. Id. at ¶¶ 41-42. The Wilson Vehicle was pushed forward into a vehicle driven by an unnamed party, Paul Jenkins. The force from the Tractor caused Jenkins' vehicle to be pushed to the left and the Wilson Vehicle to continue to be pushed forward and into the rear of the Woodby Vehicle. Id. at ¶¶ 44-45.

Plaintiffs allege that the section of Interstate-26 where the accident occurred was under construction; construction workers were performing work on the roadway at the time and multiple signs told motorists to slow down and be careful of the work zone.[3] Id. at ¶¶ 32-33. Additionally, the Tractor was carrying hazardous materials consisting of petroleum products. Id. at ¶¶ 29-30.

At the time of the accident, Scott was an employee and/or agent of APC, PC and/or CD Energy (the "Corporate Defendants"). Id. at ¶ 16. APC operates and/or manages a fleet of motor carriers and drivers who transport petroleum

---

[3] Defendants dispute this allegation, stating that there was no construction and there were no workers or signs at the specific location of the crash. Doc. 6 at ¶¶ 32-33.

products. Id. at ¶ 6–8. PC, at all relevant times, was a member, manager, and/or contractor of APC's fleet of motor carriers. Id. at ¶ 10. CD Energy owned the Tractor and leased it to PC; Scott drove the Tractor on behalf of and under the DOT authority of APC. Id. at ¶ 14.

The Amended Complaint asserts claims for: 1) negligence and gross negligence against all Defendants; 2) negligent training against the Corporate Defendants; and 3) punitive damages against Scott.[4]

## II. Legal Standards

### A. Rule 12(b)(6)

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

---

[4] Certain claims have been dismissed and/or clarified since the filing of the Amended Complaint. First, Jennifer Gregory Woodby, who was not named as a plaintiff in the original complaint, asserted a claim against all Defendants for loss of consortium in the Amended Complaint. Doc. 23 at ¶¶ 63-67. On February 8, 2022, the parties filed a Stipulation of Dismissal as to Ms. Woodby's claim. Doc. 36. Second, Plaintiffs have indicated that they are not seeking punitive damages against the Corporate Defendants, see Doc. 31 & 17, and do not assert negligent supervision or negligent entrustment claims. Cf. Doc. 1 & Doc. 23; See also Doc. 32 at 7 (stating that the omission of these claims in the Amended Complaint "was not an oversight").

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

### B. Rule 12(c)

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to delay trial." A motion brought under Rule 12(c) is analyzed "under the same standards as a motion to dismiss under Rule 12(b)(6)." Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013).

However, "[u]nlike when deciding a Rule 12(b)(6) motion to dismiss, the Court, when deciding a motion for judgment on the pleadings, may consider

5

the Answer." Garey v. James S. Farrin, P.C., 1:16CV542, 2018 WL 6003546, at *2 (M.D.N.C. Nov. 15, 2018) (citing Alexander v. City of Greensboro, 801 F.Supp.2d 429, 433 (M.D.N.C. 2011)). In particular, "[t]he factual allegations contained in the Answer 'are taken as true only where and to the extent they have not been denied or do not conflict with the complaint.'" Id. (quoting Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991)); see also Anderson v. U.S. Life Ins. Co., No. 3:13-cv-489-MOC, 2014 WL 4987207, at *3 (W.D.N.C. Oct. 7, 2014) ("In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice.") (citing Bradley v. Ramsey, 329 F.Supp.2d 617, 622 (W.D.N.C. 2004)). "Because the plaintiff is not required to reply to the Answer, 'all allegations in the [A]nswer are deemed denied'" and "[t]he defendant cannot therefore 'rely on allegations of fact contained only in the [A]nswer, including affirmative defenses, which contradict Plaintiffs' complaint.'" Garey, 2018 WL 6003546, at *2; (quoting Jadoff, 140 F.R.D. at 332) (alteration in Garey).

### III. Discussion

"Because this case is in federal court based on diversity jurisdiction, the law of the forum state—in this case, North Carolina—applies." Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 782-83 (4th Cir. 2012).

### A. Partial Motion to Dismiss

Through the Partial Motion to Dismiss, Defendants seek the dismissal of Plaintiffs' claim for gross negligence against all Defendants and Plaintiffs' claim for punitive damages against Scott.

#### 1. Gross Negligence

Defendants argue that Plaintiffs have not alleged "any one of the factors required for a claim of gross negligence in a motor vehicle negligence case, specifically that they have failed to allege that Scott was intoxicated, driving at an excessive speed, or engaged in a racing competition at the time of the collision." Doc. 26 at 2. Defendants argue that any gross negligence claim against the Corporate Defendants also necessarily fails because such a claim is based only on vicarious liability, and Plaintiffs have failed to allege a plausible gross negligence claim against Scott. Id.

In Yancey v. Lea, 354 N.C. 48 (2002), *superseded on other grounds by* Piazza v. Kirkbride, 372 N.C. 137 (2019), the North Carolina Supreme Court explained that, in the context of motor vehicle accidents,

> the gross negligence issue has been confined to circumstances where at least one of three rather dynamic factors is present: (1) defendant is intoxicated; (2) defendant is driving at excessive speeds; or (3) defendant is engaged in a racing competition.
>
> 354 N.C. at 53-54.

The Yancey court, however, also stated that these factors do not "comprise an exhaustive list" in determining gross negligence. Id. at 54; see also Mikos v. Clark, No. 1:19-CV-00309-MR-WCM, 2020 WL 5549605, at *2 (W.D.N.C. Sept. 16, 2020) (explaining that gross negligence in the context of motor vehicle accidents is "a less culpable standard than willful and wanton conduct" and that the factors set out in Yancey are not exhaustive and instead serve as "a starting point to determine the level of culpability required for gross negligence").

Accordingly, "a claim for 'gross negligence' will lie where the defendant either deliberately or recklessly shirked his known duty." Garcia v. United States, No. 4:15-CV-88-FL, 2016 WL 916432, at *4 (E.D.N.C. Mar. 10, 2016) (denying defendant's motion to dismiss gross negligence claim because defendant "performed a u-turn despite his knowledge of the specific, objective danger posed by that act"); cf. Blue v. Hill, 5:18-cv-00445-M, 2020 WL 4677669, at *5-6 (E.D.N.C. Aug. 12, 2020) (finding gross negligence claim did not survive summary judgment where driver used his cell phone 12 minutes before crash and failed to avoid the collision despite policy to look out for obstacles, change lanes safely, and adjust speed for conditions).

Here, Plaintiffs have alleged that Scott was carrying "hazardous materials consisting of petroleum products," that the section of Interstate 26 where the accident occurred was under construction, with multiple warning

8

signs, and construction workers present, and that Scott "[d]rove the tractor trailer negligently, recklessly, carelessly, and heedlessly in conscious or reckless disregard of the rights and safety of others in violation of N.C.G.S. § 20-140 and §20-141.6." Doc. 23 at ¶¶ 30, 32, 33, 52(b).

The undersigned is persuaded that Plaintiffs have alleged sufficient facts to state a claim for gross negligence.

### 2. Punitive Damages

"Punitive damages are available to a plaintiff in North Carolina in order to punish a defendant for its egregious wrongful acts and to deter the defendant and other individuals from committing similar wrongful acts." Palacino v. Beech Mountain Resort, Inc., No. 1:13-cv-00334, 2015 WL 8731767, at *4 (W.D.N.C. Dec. 11, 2015) (citing N.C. Gen. Stat. § 1D-1). "A Plaintiff may recover punitive damages only where a defendant is liable for compensatory damages and the plaintiff proves the existence of one of the aggravating factors by clear and convincing evidence." Id. (citing N.C. Gen. Stat. § 1D-15). "The three aggravating factors include: (1) fraud; (2) malice; and (3) willful or wanton conduct." Id. (citing N.C. Gen. Stat. § 1D-15(a)).

Plaintiffs allege "the aggravating factor in this case is the willful or wanton conduct, as defined in N.C.G.S. § 1D-5(7)." Doc. 23 at ¶ 72; see also N.C.G.S. § 1D-5(7). "Punitive damages are allowable for injuries caused by the

9

Case 1:21-cv-00158-MR-WCM    Document 39    Filed 04/11/22    Page 9 of 20

willful or wanton operation of a motor vehicle." Marsh v. Trotman, 96 N.C. App. 578, 580 (1989), disc. review denied, 326 N.C. 483 (1990).

"'Willful or wanton conduct' means more than gross negligence." Mikos, 2020 WL 5549605, at *2. "As willful and wanton conduct is greater than gross negligence, there needs to be more, namely there must be [. . .] 'the conscious and intentional disregard of and indifference to the rights and safety of others.'" Id. (quoting N.C.G.S. § 1D-5(7)); see also Justice v. Greyhound Lines, Inc., No. 5:16-CV-132-FL, 2018 WL 1570804, at *4 (E.D.N.C. Mar. 30, 2018) (Where gross negligence has been established, the additional "aggravating factor" needed to satisfy the standard for punitive damages is "the state of mind described in the statute as 'conscious and intentional disregard of and indifference to the rights and safety of others'").

The parties have not cited, and the undersigned has not located, authorities in which a court in this district or a North Carolina state court has, at the motion to dismiss stage, dismissed a claim for punitive damages while allowing a claim for gross negligence to proceed. See Lively v. Reed, 1:20-CV-119-MOC-WCM, 2020 WL 4584245, at *2 (W.D.N.C. Aug. 8, 2020) (denying motion to dismiss claim for punitive damages and allowing defendant to reassert its contentions at summary judgment); Total Petrochemicals & Refining. USA, Inc. v. RSI Leasing, Inc., No. 3:20-cv-372-FDW-DSC, 2020 WL

6803848, at *4 (W.D.N.C. Nov. 19, 2020) (denying motion to dismiss plaintiff's claims of gross negligence and punitive damages).

It appears that courts more often distinguish between claims of gross negligence and punitive damages in the context of a motion for summary judgment. See Justice v. Greyhound Lines, Inc., No. 5:16-CV-132-FL, 2018 WL 1570804, at *5 (E.D.N.C. Mar. 30, 2018) (granting motion for partial summary judgment and explaining "although Greyhound's policy to reduce speed by 25% in adverse weather conditions constitutes a sufficient basis for the jury to conclude that defendant was grossly negligent in driving too fast for the conditions, any further inference that, at some relevant time, [the driver] deliberated about the rights of other motorists and made the 'conscious and intentional' choice to disregard those rights and adopt an attitude of 'indifference' toward them, must rest on speculation about [the driver]'s mental state that is not supported by any evidence of record") (citations omitted); Mathis v. Terra Renewal Services, Inc., 3:19-cv-180-RJC-DSC, 2021 WL 2425233, at *7 (W.D.N.C. June 14, 2021) ("Plaintiff's claims for negligence and even gross negligence survive summary judgment, [but] Plaintiff does not reach the even higher bar required to state a claim for punitive damages."); see also Palacino, 2015 WL 8731767, at *4; Mikos v. Clark, 2020 WL 5549605, at *2.

11

Case 1:21-cv-00158-MR-WCM Document 39 Filed 04/11/22 Page 11 of 20

Viewing the allegations in the light most favorable to Plaintiffs and considering the relevant case law and stage of this litigation, the undersigned is not persuaded that Plaintiffs' claim for punitive damages against Scott should be dismissed on the current record.

### B. Motion for Judgment on the Pleadings

Through the Motion for Judgment on the Pleadings, Defendants seek the dismissal of Plaintiffs' claim for negligent training against the Corporate Defendants.

#### 1. APC and PC

In Pracht v. Saga Freight Logistics, LLC, No. 3:13-CV-529-RJC-DCK, 2015 WL 5918037 (W.D.N.C. Oct. 9, 2015), the court granted summary judgment and dismissed the plaintiffs' claims for negligent hiring, supervision, training, or retention. There, the plaintiffs' claims arose from a fatal motor vehicle accident involving a tractor trailer driven by Tomas Herrerra, Jr. ("Herrerra"). The defendant, Saga Freight Logistics, LLC ("Saga"), admitted that Herrerra was acting within the course and scope of his employment with Saga at the time of the accident. The court explained:

> [Plaintiffs] each assert claims for negligent hiring, supervision, training, or retention against Saga. These claims provide Plaintiffs an alternate theory upon which they may seek to impose liability upon Saga for Herrerra's conduct. *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116, 124 (N.C.Ct.App.1986); *see also McFadyen v. Duke Univ.*,

12

Case 1:21-cv-00158-MR-WCM     Document 39     Filed 04/11/22     Page 12 of 20

786 F.Supp.2d 887, 1002 (M.D.N.C.2011), *aff'd in part, rev'd in part, dismissed in part sub nom. Evans v. Chalmers*, 703 F.3d 636 (4th Cir.2012). The application of a theory of independent negligence in hiring, training, supervising, or retaining an employee is important in cases where the employee's acts were not within the scope of his or her employment. *Hogan*, 340 S.E.2d at 124. In such a case, this theory allows a plaintiff to establish liability on the part of the employer where no liability would otherwise exist. *Id*. In other words, these claims arise when an employee is acting outside the scope of employment, and they may only be asserted as an alternative to respondeat superior liability. *Brown v. Tethys Bioscience, Inc.*, No. CIV.A. 1:10–1245, 2012 WL 4605671, at *6 n. 4 (S.D.W.Va. Oct.1, 2012).

Saga has admitted that Herrerra was acting within the course and scope of his employment with Saga at the time of the accident. (Doc. Nos. 3 ¶ 9; 36 ¶ 13; 62 ¶ 13). Therefore, Saga is vicariously liable for Herrera's conduct pursuant to the doctrine of respondeat superior. *Parker v. Erixon*, 123 N.C.App. 383, 473 S.E.2d 421, 426 (N.C.Ct.App.1996). Because Saga is liable via respondeat superior, Plaintiffs' claims for negligent hiring, supervision, training, or retention against Saga cannot proceed. Therefore, Saga's Motion for Summary Judgment is granted as to both [Plaintiffs'] claims for negligent hiring, supervision, training, or retention.

Pracht, 2015 WL 5918037, at *8.

Other courts in this district have followed Pracht and dismissed claims for negligent hiring, training, supervision, retention, or entrustment against an employer when that employer has admitted that the defendant employee was acting within the course and scope of his employment at the time of the allegedly negligent act. See Lively v. Reed, No. 1:20-cv-119-MOC-WCM, 2022

13

WL 138691, at *6 (W.D.N.C. Jan. 14, 2022) (granting summary judgment and explaining that "when the employer admits the employment relationship and is already liable for the employee's negligent conduct, alternative theories of direct negligence against the employer unnecessarily add additional elements which, if proven, do not change the scope of liability but are substantially likely to prejudice the jury against the employer"); see also Turner v. U.S.A. Logistics, No. 3:12-cv-289-DCK, 2016 WL 3607162 (W.D.N.C. July 1, 2016).

Here, Defendants have admitted agency between Scott (the driver of the Tractor) and APC and PC (two of the three Corporate Defendants). See Doc. 28 at ¶ 16. Relying on Pracht, Defendants argue that judgment should be entered dismissing Plaintiffs' claim for negligent training against APC and PC.

In response, Plaintiffs assert that "[n]egligent training is…conceptually distinct and separate from seemingly related direct negligence claims, such as negligent hiring, retention, supervision, and entrustment," that the Pracht court improperly "lumped" a negligent training claim in with claims for negligent supervision and retention, and that "unlike other claims of direct negligence, negligent training claims do not appear to be barred if the employee is acting within the course of their employment." Doc. 32 at 8 & 11.

Plaintiffs do not, however, cite any directly applicable authority holding that Pracht was wrongly decided, and other courts have followed similar reasoning as that set out in Pracht.

In Johnson v. Lamb, 273 N.C. 701, 706 (1968), the North Carolina Supreme Court considered whether the trial court erred by not submitting "the alleged failure of the corporate defendant to supervise its employee, Miss Lamb" to the jury. There, the corporate defendant had admitted that Lamb was an employee of the corporate defendant and was acting in the course and scope of her employment. Id. The court concluded that the allegation of negligent supervision "was not material to the determination of the rights of the parties," and explained "[i]f an employee is negligent while acting in the course of employment ..., the employer is liable in damages under the doctrine of respondeat superior, notwithstanding the fact that the employer, himself, exercised due care in the supervision and direction of the employee." Id. "Conversely, failure to instruct or supervise an employee does not impose liability upon the employer if, in fact, the employee was guilty of no negligence in the performance of his work." Id.; see also Heath v. Kirkman, 240 N.C. 303, 307-08 (1954) (stating that if defendant employers admitted that defendant driver was acting in the course and scope of his employment, allegations that the defendant employers "were negligent in having and retaining [driver]…and entrusting to him the operation" of their vehicle "would become irrelevant and prejudicial"); Justice v. Greyhound Lines, Inc., No. 5:16-CV-132-FL, 2019 WL 267910, at *2 (E.D.N.C. Jan. 18, 2019) ("Under North Carolina law, a defendant employer's admission of vicarious liability, as here, eliminates

15

Case 1:21-cv-00158-MR-WCM Document 39 Filed 04/11/22 Page 15 of 20

a cause of action for direct liability under theories including negligent supervision, negligent retention, negligent training, negligent hiring, or negligent entrustment as a matter of law").[5]

Further, in Turner, 2016 WL 3607162, the court rejected an argument similar to that made by Plaintiffs here. There, the plaintiff argued that "the Pracht decision 'is counter to North Carolina Law'" because North Carolina courts have recognized "an independent cause of action for negligent hiring and retention." Turner, 2016 WL 3607162, at *4–5. The Turner court ultimately found no justification for disregarding Pracht, which the court explained "squarely addresses the precise issue at hand," and granted summary judgment on the claims for negligent hiring, supervision, and retention. Turner, 2016 WL 3607162, at *5.

Finally, although some courts in other jurisdictions have decided that "an admission of liability does not preclude an action for both respondeat

---

[5] Courts have recognized a limited exception to this rule in the context of a claim for punitive damages. See Justice, 2019 WL 267910, at *2 ("The only recognized context under North Carolina law where a stipulation to vicarious liability would not preclude theories of direct liability against an employer is where a claim for punitive damages is presented") (citing N.C. Gen. Stat. § 1D-15; Plummer v. Henry, 7 N.C. App. 84, 89–90 (1969) (allowing claim for punitive damages stemming from negligent entrustment to proceed)); Lively, 2022 WL 138691, at *6 ("The only narrowly drawn exception to this rule is in a negligent entrustment case where the plaintiff's allegations as to negligent entrustment would have justified an award of punitive damages against the employer"). This exception does not apply in this case, though, because Plaintiffs do not seek punitive damages against any of the Corporate Defendants.

superior and negligent entrustment, training, hiring, retention, or supervision," Poplin v. Bestway Express, 286 F.Supp.2d 1316, 1319 (M.D. Ala. Oct. 6, 2003), such rulings do not appear to be universal. Id. at 1318 ("Many state courts and federal courts applying state law have held that it is improper to allow a plaintiff to proceed under two theories of recovery once the corporation admits that the alleged tortfeasor was its agent acting with the scope of his employment. This position appears to be the majority view").

As stated above, Defendants have admitted agency between Scott and APC and PC. See Doc. 28 at ¶ 16. While cases from this district have previously dismissed, in the context of summary judgment, direct negligence claims against employers following an admission of the employee's agency, see Pracht, 2015 WL 5918037; Turner, 2016 WL 3607162; Lively v. Reed, 2022 WL 138691; see also Lively v. Reed, No. 1:20-cv-119-MOC-WCM, 2020 WL 4584245 (W.D.N.C. Aug. 10, 2020) (denying motions to dismiss and for judgment on the pleadings, and allowing defendant employer – who had admitted that defendant employee's actions "were committed within the course and scope of his employment" – to "reassert its contentions after discovery and upon the filing of a summary judgment motion"), considering the admission of agency here, it is not apparent that any additional discovery would be necessary to

determine the viability of Plaintiffs' negligent training claim against APC and PC.[6]

The undersigned will therefore recommend that the Motion for Judgment on the Pleadings be granted as to APC and PC.

### 2. CD Energy

Defendants assert that Plaintiffs have failed to allege sufficiently that Scott was an agent of CD Energy and thus that CD Energy had a duty to train him.[7]

However, Plaintiffs have alleged that CD Energy owned the Tractor that Scott operated and that Scott was "an employee and/or agent of Defendants APC, PC, and/or CD Energy." Doc. 23 at ¶¶ 13, 16. These allegations are sufficient to withstand a request for dismissal at this stage of the proceedings. See N.C.G.S. § 20-71.1(b); Brewer v. Spivey, 108 N.C. App. 174, 178 (1992).

---

[6] Plaintiffs argue that it is significant that this issue is presented by a Motion to Dismiss rather than by a Motion for Summary Judgment and assert that the Federal Rules of Civil Procedure allow parties to assert alternative claims. See Doc. 32 at 19. Plaintiffs do not, however, point to any outstanding factual issues necessary to resolve this issue.

[7] In contrast to APC and PC, Defendants have not admitted agency between Scott and CD Energy.

IV. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that:

A. Defendants' Partial Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 26) be **DENIED**.

B. Defendants' Motion for Judgment on the Pleadings (Doc. 29) be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiffs' claim of negligent training against Associated Petroleum Carriers, Inc. and Petroleum Carriers, Inc. be **DISMISSED**.

Signed: April 11, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).