IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21 CV 158-MR-WCM

| | |
|---|---|
| CHRISTOPHER LYNN WILSON, TYANNA ARLENE WILSON, and CHRISTOPHER GEORGE WOODBY, <br><br>      Plaintiffs, <br>v. <br><br>ASSOCIATED PETROLEUM CARRIERS, INC.; CHRISTOPHER LEWIS SCOTT; PETROLEUM CARRIERS, INC.; and CD ENERGY, LLC, <br><br>      Defendants. | ORDER |

This matter is before the Court on Defendants' Motion to Quash Subpoenas (the "Motion to Quash," Doc. 52).

I.    Relevant Background

Plaintiffs' claims arise out of a multi-vehicle accident on Interstate 26 in which a 2018 Peterbilt tractor-trailer, which was being operated by Defendant Christopher Lewis Scott ("Scott"), collided with a 2011 Hyundai, which was being driven by Plaintiff Tyanna Wilson and in which Plaintiff Christopher Wilson was riding as a passenger (the "Wilson Vehicle").[1]

---

[1] Ms. Wilson's minor son was also riding in the Wilson Vehicle at the time.

Plaintiffs allege that the tractor-trailer was owned by Defendant CD Energy ("CD Energy") and had been leased to Defendant Petroleum Carriers, Inc. ("PC"). Plaintiffs also allege that PC was a "member, manager, and/or contractor" of Defendant Associated Petroleum Carriers, Inc., ("APC"), which "operated, trained, retrained, supervised, disciplined, and/or managed a fleet of motor carriers and drivers who hauled a variety of petroleum products in interstate commerce."

The impact from the crash pushed the Wilson Vehicle forward, first into a vehicle driven by an unnamed party and subsequently into the rear of a 1992 Honda being operated by Plaintiff Christopher George Woodby ("Woodby").

In an Amended Complaint filed on September 10, 2021, Plaintiffs Christopher Lynn Wilson, Tyanna Arlene Wilson, Christopher George Woodby, and Jennifer Gregory Woodby asserted claims for negligence and gross negligence, negligent training, loss of consortium, and punitive damages. Doc. 23.

Jennifer Woodby's claims were subsequently dismissed voluntarily by stipulation. Doc. 36. In addition, by Order filed on June 9, 2022, Plaintiffs' claim for negligent training against APC and PC was also dismissed. Doc. 43. Therefore, remaining are Plaintiffs' claims for negligence and gross negligence

(against all Defendants), negligent training (against CD Energy), and punitive damages (against Christopher Lewis Scott).[2]

## II. The Subpoenas

On December 19, 2022, Woodby issued document subpoenas ("Subpoenas") to the following insurance carriers: 1) Crum & Forster Insurance, 2) United States Fire Insurance, 3) Endurance American Specialty Insurance, and 4) Hallmark Specialty Insurance. Copies of the Subpoenas are attached to the Motion to Quash. Doc. 52-1. The Subpoenas direct the carriers to produce the "complete insurance underwriting file and application" for certain insurance policies.

Defendants seek an order quashing the Subpoenas. The Motion to Quash is fully briefed and a hearing was conducted on February 27, 2023. This Order now follows.

## III. Discussion

### A. Rule 45

#### 1. Standing

Defendants contend that they have standing to bring the Motion to Quash since the information contained in the carriers' underwriting files "is

---

[2] It appears that APC and PC are incorrectly shown on the docket as terminated parties.

3

specific to Defendants" and includes "private and confidential information." Doc. 53 at 5.

In response, Plaintiffs argue that Defendants have failed to establish which, if any, privilege applies or to which documents any such privilege would apply. Doc. 58 at 2. During the hearing, Plaintiffs initially maintained their position that Defendants lacked standing generally, but later acknowledged that Defendants may have standing for some purposes.

"Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005) (citing Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, 635 (D.Kan.1999) and 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (1995)).

In this case, Defendants have provided no specific information about the materials to be produced by the carriers in response to the Subpoenas. Defendants' reply brief, for example, states that Defendants have a personal interest in the documents because the underwriting files, "[b]y their very nature," contain information specific to the structure and operation of the corporate Defendants' businesses. Doc. 60 at 3.

4

During the hearing, Defendants made similar arguments and they ultimately did disclose that APC is the named insured for the various policies and that coverage under those policies is provided to the other Defendants. They also gave examples of the types of information that are often found, or might be found, in their view, in underwriting files.

However, and despite acknowledging that they know what information was sent to the carriers and that they have obtained a copy of one of the actual underwriting files being sought by the Subpoenas, Defendants did not describe with any specificity the information, even by category, that Defendants previously provided to the carriers in relation to their applications for coverage, the information Defendants expect to be contained in the files, or how that information pertains to any particular Defendant.

In addition, Defendants provided no controlling authority to support the proposition that an insured, simply by virtue of its status as an insured, has a personal interest in its insurance carrier's underwriting file, such that the insured has standing to bring a motion to quash a subpoena for the production of the underwriting file. See e.g., Mid-Continent Cas. Co. v. I & W, Inc., No. CIV-11-0329 WJ/LAM, 2012 WL 12819191, at \*3 (D.N.M. Feb. 23, 2012) ("Plaintiff submits no authority, and the Court is not aware of any, in which a court has found that underwriting documents or documents relating to

5

insurance policies constitute a personal right or privilege that would confer standing on a party to move to quash a subpoena served on a non-party.").

Therefore, regardless of whether an insured could, under some circumstances, be found to have standing to move to quash a subpoena for its carrier's underwriting file, Defendants have not made a sufficient showing in that regard in this case. See Lyman v. Greyhound Lines, Inc., No. 2:20-CV-01812-DCN, 2021 WL 3811298, at *3 (D.S.C. Aug. 26, 2021) (agreeing that defendants have a personal right in their confidential commercial information but finding that "defendants have not made any factual showing that the documents requested in the subpoena constitute confidential commercial information")

## 2. Specific Objections under Rule 45

Alternatively, and even if it is assumed that Defendants (or any of them) have standing to challenge to the Subpoenas, Defendants have not carried their burden of explaining why the Court must or should quash the Subpoenas pursuant to Rule 45. See Joiner v. Choicepoint Servs., Inc., No. CIV 105CV321, 2006 WL 2669370, at *4 (W.D.N.C. Sept. 15, 2006) ("To quash a subpoena issued under Rule 45, the moving party must demonstrate, generally speaking, that the subpoena does not allow a reasonable time for compliance, requires a person who is not a party to travel more than 100 miles, requires disclosure of

privileged or protected information, or the subpoena 'subjects a person to undue burden.'").

Here, Defendants cite Rule 45(d)(3)(A)(iii), which directs that a subpoena that requires the disclosure of privileged or other protected matter (if no exception or waiver applies) be quashed or modified, and Rule 45(d)(3)(B)(i), which allows a subpoena that requires the disclosure of a trade secret or other confidential research, development, or commercial information to be quashed or modified.

Again though, Defendants have not provided details about the materials contained, or believed to be contained, in the underwriting files such that the Court could conclude that the material to be disclosed constitutes "privileged or other protected matter" or that it should be deemed to be "a trade secret or other confidential research, development, or commercial information."

Consequently, to the extent the Motion to Quash has been brought pursuant to Rule 45, it will be denied.

### B. Rule 26

Defendants also contend that the Subpoenas should be quashed on relevancy grounds pursuant to Rule 26 of the Federal Rules of Civil Procedure.[3]

---

[3] Defendants have not filed a motion for a protective order but asserted during the hearing that the Motion to Quash could be construed as including such a request under Rule 26. Plaintiffs did not object to the Court's consideration of Defendants' arguments in this regard. Under these circumstances, the undersigned concludes

7

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This determination is to be made "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Oppenheimer v. Episcopal Communicators, Inc., No. 1:19-CV-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020) (quoting Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C. 2010)).

A district court has broad discretion in managing discovery, Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995),

---

that Defendants' relevancy objections are sufficiently before the Court. See Lyman v. Greyhound Lines, Inc., No. 2:20-CV-01812-DCN, 2021 WL 3811298, at *3, n.2 (D.S.C. Aug. 26, 2021) (citing cases)("[W]hen a party files only a motion to quash, some courts will construe it as a motion for a protective order when it challenges the relevancy of documents sought by a subpoena."); see also HDSherer LLC v. Natural Molecular Testing Corp., 292 F.R.D. 305, 308 (D.S.C. July 31, 2013) (stating that though Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena, the scope of discovery allowed under a subpoena is the same as under Rule 26 and concluding that "regardless of whether the Court considers Defendant's Motion under Rule 45 or Rule 26, the Court must review Plaintiffs' subpoenas duces tecum under the relevancy standards set forth in Rule 26(b)").

including the "discretion to determine whether discovery is relevant to a party's claim or defense." Serum Source Int'l, Inc. v. GE Healthcare Bio-Sciences Corp., No. 3:16CV471, 2017 WL 915132, at *1 (W.D.N.C. Mar. 8, 2017) (citing Watson v. Lowcountry Red Cross, 974 F.2d 482, 489 (4th Cir. 1992)).

Here, Plaintiffs assert that their damages "could exceed the disclosed policy coverages" and that they are "entitled to discovery of the insurance policies." Plaintiffs also state that they wish to obtain information regarding Defendants' risk management programs and driver retention programs at the time of the crash and before the crash. Doc. 58 at 2-3.

Defendants contend that the information sought by the Subpoenas is irrelevant to Plaintiffs' remaining claims.

Plaintiffs are entitled to information regarding Defendants' applicable insurance coverage,[4] and the parties are in agreement that Defendants have produced information regarding certain policies. Plaintiffs have not provided, however, a factual basis for arguing that Defendants' representations about the policies at issue are incomplete and for believing that additional policies and coverage may exist, such that Plaintiffs should be allowed to check Defendants' representations through discovery taken from the carriers.

---

[4] For example, Rule 26(a)(1)(A)(iv) requires parties to produce any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment or to indemnify or reimburse for payments made to satisfy the judgment.

9

Similarly, they have not described how discovery of the underwriting files would be an efficient method to obtain this additional information.

Further, like Defendants, Plaintiffs make only general references to the types of information they believe may be in the underwriting files and do not explain how that information is relevant to their remaining claims. For instance, Plaintiffs contend that they should be able to obtain information regarding the types of drivers that Defendants were employing, but they do not explain what information they believe exists in the underwriting files relating to any individual Defendant and why that information is relevant to their remaining claims against that Defendant. Such an explanation would be particularly helpful since Plaintiffs' remaining negligent training claim pertains only to CD Energy, and Plaintiffs have no claims for negligent hiring or supervision.

Finally, as Plaintiffs acknowledged during the hearing, the scope of the Subpoenas is problematic. Each one seeks the relevant carrier's "complete insurance underwriting file and application" without regard to any time or other limitation.

Consequently, the undersigned concludes that the information sought is not sufficiently relevant and that the Subpoenas should be quashed on this basis. See Fieldturf USA, Inc. v. Specialty Surfaces Int'l, Inc., No. 3:06MC016, 2006 WL 3500902, at *2 (E.D. Va. Dec. 5, 2006) ("In its second request,

10

Fieldturf asks Colony National to produce '[t]he complete underwriting file for all policies of insurance issued to Specialty Surfaces.' Fieldturf has failed to demonstrate how the underwriting file is relevant to any of the claims it asserts in the Amended Complaint.").

**IT IS THEREFORE ORDERED THAT:**

1. To the extent Defendants' Motion to Quash Subpoenas (Doc. 52) is brought pursuant to Rule 45 of the Rules of Civil Procedure, it is **DENIED**.

2. To the extent Defendants' Motion to Quash Subpoenas (Doc. 52) is brought pursuant to Rule 26 of the Rules of Civil Procedure, it is **GRANTED**, and the Subpoenas are hereby **QUASHED.**

3. The Clerk is respectfully directed to amend the docket to show that Defendants Associated Petroleum Carriers, Inc. and Petroleum Carriers, Inc. remain parties to this action.

Signed: March 16, 2023

W. Carleton Metcalf
United States Magistrate Judge