IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00158-MR-WCM

| | |
|---|---|
| CHRISTOPHER LYNN WILSON, TYANNA ARLENE WILSON, CHRISTOPHER GEORGE WOODBY, and JENNIFER G. WOODBY,<br><br>Plaintiff,<br><br>vs.<br><br>ASSOCIATED PETROLEUM CARRIERS, INC., PETROLEUM CARRIERS, INC., CD ENERGY, LLC, and CHRISTOPHER LEWIS SCOTT,<br><br>Defendants. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Partial Summary Judgment. [Doc. 71].

## I. PROCEDURAL BACKGROUND

On June 17, 2021, Plaintiffs Christopher Lynn Wilson, Tyanna Arlene Wilson, Christopher George Woodby, and Jennifer G. Woodby (collectively, "Plaintiffs") brought this action against Defendants Associated Petroleum Carriers, Inc., Petroleum Carriers, Inc., CD Energy, LLC, and Christopher Lewis Scott ("Scott") (collectively, "Defendants"), alleging claims for

negligence, gross negligence, willful or wanton negligence, and recklessness, and seeking both compensatory and punitive damages [Doc. 1].

On September 10, 2021, the Plaintiffs filed an amended complaint asserting negligence and gross negligence against all Defendants, negligent training against the Corporate Defendants, and punitive damages against Scott. [Doc. 23]. Plaintiff Jennifer G. Woodby, Christopher Lynn Wilson, and Tyanna Arlene Wilson subsequently dismissed their claims, leaving Christopher George Woodby as the sole remaining Plaintiff. The Plaintiff dismissed his claims against Defendant CD Energy, LLC, on July 12, 2023. [Docs. 36, 65, 70].

On July 14, 2023, the remaining Defendants moved for partial summary judgment on the Plaintiff's claims for gross negligence and punitive damages only. [Doc. 71]. The Plaintiff filed a Response to the Defendants' Motion for Partial Summary Judgment [Doc. 73], and the Defendants filed a Reply Brief in Support of Defendants' Motion for Partial Summary Judgment [Doc. 74]. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 814, 115 S. Ct. 68 (1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the nonmoving party who must convince the Court that a triable issue does exist. Id. In considering the facts on a motion for summary judgment, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).

## III. FACTUAL BACKGROUND

Viewing the forecast of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

On December 28, 2019, Defendants' tractor trailer struck a vehicle that caused another vehicle to strike the Plaintiff's vehicle, resulting in significant injuries to the Plaintiff. [Doc. 72 at 3]. The Defendant Scott was driving the tractor trailer carrying hazardous flammable liquid. [Doc. 73 at 2-3]. The crash occurred in a construction zone on I-26 West in Asheville, North Carolina. [Doc. 72 at 2]. The Defendant Scott, who stated he was aware of the construction project as it had been ongoing for a few months, was unable to stop and caused the collision. [Doc. 73 at 3]. The speed limit at the crash location was 55 miles per hour ("mph"); Defendant Scott stated that he was driving 60 mph and that the cars in front of him were six to seven seconds ahead of him. [Doc. 73 at 4]. Given these statements, the Plaintiff's accident reconstruction expert opined that Defendant Scott could have brought his vehicle to a complete stop in 367 feet and avoided the collision. [Doc. 73-2 at 7]. Further analysis, including of tire impressions at the scene of the accident, led the same expert to conclude that the Defendant Scott's vehicle was traveling at approximately 50 mph at impact with the line of cars and Plaintiff's vehicle. [Id. at 5].

The Defendant Scott testified that he was on a phone call shortly before[1] the crash occurred; this call was confirmed by his cell phone records. [Doc. 73 at 4]. He also testified that he would use one earbud in one ear to talk on the phone while he was driving and did so on the day of the collision. [Doc. 72 at 5]. Both of the Plaintiff's experts opined that the cause of the crash was the Defendant Scott being distracted by his cell phone. [Doc. 73 at 14]. The Defendant's expert also stated that "drivers should have a heightened awareness when traveling through a construction zone," while the Plaintiff's vehicle safety expert opined that "driving and transporting hazardous material can be very hazardous that requires 'a lot more caution than you would if you were just transporting dry goods, or perishables.'" [Doc. 73 at 3].

The Plaintiff has suffered severe injuries and has undergone four surgeries to date as a result of the collision. [Doc. 73 at 7]. He has incurred over $230,000.00 in medical bills and continues to be treated for physical and mental injuries. [Doc. 73 at 7].

---

[1] The parties dispute whether the Defendant Scott was still on the phone at the time of the accident or whether the phone call had ended at that point in time. [Doc. 73 at 14]. For the purposes of the present motion, the Court accepts the facts as most favorable to the non-moving party—here, the Plaintiff—and finds this disputed fact immaterial.

## IV. DISCUSSION

### A. Gross Negligence

The North Carolina Supreme Court has distinguished between ordinary negligence and gross negligence as follows:

> [T]his Court, in references to *gross negligence*, has used that term in the sense of wanton conduct. Negligence, a failure to use due care, *be it slight or extreme*, connotes inadvertence. Wantonness, on the other hand, connotes *intentional wrongdoing*. Where malicious or wilful [*sic*] injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of punitive damages. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.
>
> Thus, the difference between the two is not in degree or magnitude of inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the safety of others. An act or conduct moves beyond the realm of negligence when *the injury or damage* itself is intentional.

Yancey v. Lea, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001) (emphases in original) (citation omitted). In Yancey, the North Carolina Supreme Court surveyed motor vehicle negligence cases and found that gross negligence, a less culpable standard than willful and wanton conduct, "has been confined to circumstances where at least one of three rather dynamic factors is present: (1) defendant is intoxicated; (2) defendant is driving at excessive

speeds; or (3) defendant is engaged in a racing competition." 354 N.C. 48, 53–54 (2002) (citations omitted). While these factors do not "comprise an exhaustive list" in determining gross negligence, this is a starting point to determine the level of culpability required for gross negligence. Mikos v. Clark, No. 1:19-CV-00309-MR-WCM, 2020 WL 5549605, at *2 (W.D.N.C. Sept. 16, 2020). The Fourth Circuit has interpreted Yancey and other North Carolina cases as "requir[ing] a showing of intentional wrongdoing in order to sustain a claim of gross negligence" under North Carolina law. FDIC v. Rippy, 799 F.3d 301, 314 (4th Cir. 2015).

The Plaintiff's forecast of evidence fails to show that the Defendant was intoxicated, driving at excessive speeds, or engaged in a racing competition at the time of the accident. Nor has any of the forecasted evidence suggested that the Defendants acted with the intent to cause injury or damage. The Plaintiff's claims are based on the following alleged facts: the Defendant Scott was distracted on his cell phone, was carrying hazardous flammable liquid, and drove above the speed limit in a construction zone. [Doc. 73 at 1]. Taking each of these circumstances in turn, this Court finds they do not meet the demanding standard for gross negligence.

The forecasted evidence shows that while the speed limit at the location of the accident was 55 miles per hour, Defendant Scott was going

7
Case 1:21-cv-00158-MR-WCM   Document 76   Filed 09/18/23   Page 7 of 10

60 miles per hour before the accident and 50 miles per at the time of impact. [Doc. 73 at 4-5]. Driving five miles above the speed limit, even in a construction zone, is not even close to driving at an "excessive speed." Transporting a hazardous flammable liquid, while posing certain unique risks, also is not determinative here since nothing in the forecasted evidence suggests that the Defendants failed to properly secure the hazardous materials or that any materials were spilled or otherwise contributed to the collision.

Furthermore, even assuming, as the Plaintiffs allege, that Defendant Scott was distracted by being on the phone at the time of the collision and that this distraction was the cause of the collision, these facts would not be sufficient to rise to the level of intentional wrongdoing. Talking on the phone while driving to the point of being distracted may very well give rise to a claim of ordinary negligence but cannot on its own establish gross negligence. Indeed, the Plaintiff has forecast evidence that talking on the phone while driving might be "risky," but this is not the applicable standard. [Doc. 73-6 at 5]. Therefore, the forecasted evidence is insufficient for a jury to find that the Defendants were grossly negligent, and accordingly, the Plaintiff's claim for gross negligence must fail.

## B. Punitive Damages

Because the standard for punitive damages is even more demanding than for gross negligence, the Plaintiff's punitive damages claim is unfounded for essentially the same reasons. Punitive damages are available to plaintiffs in North Carolina to punish defendants for egregiously wrongful acts and to deter the commission of similar wrongful acts. N.C. Gen. Stat. § 1D-1. A plaintiff can recover punitive damages only by proving the existence of one of three aggravating factors by clear and convincing evidence: (1) fraud; (2) malice; or (3) willful or wanton conduct. Id. at § 1D-15. "Willful and wanton conduct" is defined as the "conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." Id. at § 1D-5(7). "[W]illful or wanton conduct is 'more' than gross negligence in the sense that willful or wanton conduct requires, in addition to breach of a known duty, an aggravating factor." Justice v. Greyhound Lines, Inc., No. 5:16-CV-132-FL, 2018 WL 1570804, at *4 (E.D.N.C. Mar. 30, 2018). "[C]ourts must determine whether the plaintiff produced clear and convincing evidence from which a jury could reasonably find willful or wanton conduct." Id. at *3 (citation and quotations omitted).

Here, the Plaintiff's forecast of evidence fails to show that Defendant Scott's actions were in "conscious and intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. § 1D-5(7). Nothing in the record demonstrates that Defendant Scott's driving five miles per hour above the speed limit in a construction zone or talking on the phone while driving was done with any disregard for the safety of the Plaintiff or other drivers. Because Defendant Scott's alleged actions are insufficient evidence from which a jury could reasonably find willful or wanton conduct, the Defendants' motion for summary judgment on the Plaintiff's claim for punitive damages will be granted.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Partial Summary Judgment [Doc. 71] is **GRANTED**, and the Plaintiffs' claims for gross negligence and punitive damages are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.** Signed: September 18, 2023

Martin Reidinger
Chief United States District Judge